All right, thank you. Please be seated. This case is Case Number 4-17-0003. In re the application relating to Community Enrichment Group LLC versus Daniel Welch. Appearing for the appellant is Attorney Donna Davis and for the appellee is Attorney John Barr. Good afternoon. Ms. Davis, are you ready to proceed? Good afternoon. Donna Davis, Assistant State's Attorney, Champaign County, on behalf of Champaign County Treasurer and Ex Officio Collector Dan Welch. May it please the Court. County Treasurer and Collector Dan Welch is one of the longest serving tax officials in the state, serving Champaign County with dedication and nonpartisan rigor for many years. I wouldn't mention his name other than he is set to retire after 45 years of service and that deserves specific recognition at each opportunity. Counsel, I'm going to ask you to speak up just a little bit. That microphone is not amplifying you in any way, so you can't rely on that. Thank you. His modus operandi is to follow the Illinois Property Tax Code. As I have heard him direct simply, follow the law. And that's what this case is about. It's about the collector's requirement that the tax buyer follow the Illinois Property Tax Code. The code sets forth numerous procedures that govern the tax process, governing a system that from the local assessment officials to the Department of Revenue, to the clerk, the county treasurer, and the county collector, and whether or not those who are subject to property tax actively seek to engage in their local government. The tax system impacts all individuals in all of the taxing districts that utilize property tax to finance the majority of the services they provide. There are over 6,000 local government units in 102 counties in Illinois, so it might be fair to say there's 102 taxing systems in place in the state. The property tax code is what sits atop each of these systems, assuring that there's the constitutionally required uniformity amidst the administration of the numerous ministerial and discretionary tasks in the 102 counties. Adherence to the plain language of the code is what is at issue here, and the treasurer argues that this court should enforce the plain language of the code so that uniformity is achieved. The Circuit Court, in its initial ruling on June 14, 2016, stated clearly that a plain reading of the statute bars a sale in error and the merger of taxes. As a result, and consistent with the Court's findings in ELSI, the 2008 taxes cannot be merged. As the Circuit Court further noted in that initial decision, the statutory language is clear and requires this result. The Circuit Court was correct in its analysis of the statute and its analysis of the only other decision on this provision of the code. The opposing counsel points out to us that that case involved a scavenger sale. Does that matter? No, Justice, thank you. Whenever you look at the Court's decision in ELSI, it does not discuss the procedures and the mechanisms of a scavenger sale, and that mechanism and procedure did not influence its analysis of the statute. So the decision in ELSI was based solely on the statutory language of 2240A and B and not on any facts relating to a scavenger sale being the mechanism under which those provisions were being In the July 7, 2016, ruling on the motion to reconsider, the Circuit Court moved from its initial, what we argue is the proper interpretation, to the order at issue today, which touches on some of the uncertainty in the standard of review that the petitioner has presented in its brief, and so I will address that briefly. The Court moved from its basis of statutory interpretation to then base its interpretation very generally on what it called issues of public policy and equity. The tax petitioner in its brief has requested that the findings on equity included in that second order be deferred to by this Court. However, the petitioner cites no cases for such a movement away from this Court's de novo review of statutory interpretation. The case it cites relates to specific findings of fact on a case of an attempted redemption. All parties have continually maintained in this case that there's no such question of fact at issue here or any time in front of the Circuit Court, and because this case is solely related to statutory interpretation, this Court should maintain the de novo review. The treasurer's arguments really are three simple reasons why this Court should adhere to the plain language of the Property Tax Code. The first reason is the overarching purpose of the Property Tax Code and how that must be honored. The overarching purpose of the Code is to provide a source of revenue. The collector is then charged with distributing the revenue and the proportionate shares to each of the taxing bodies. When you drill down to the purpose of the sales, that purpose is to recover outstanding revenue. Revenue generation is the purpose of the Property Tax Code. Drilling down even further into the sales, you see preferences for redemption, not the issuance of a tax deed whenever you're engaging in the tax sale process. The facts at issue implicate whether any county treasurer should put a sale that's been the product of a sale in error back into a subsequent tax sale. That type of uncertainty doesn't align with the purpose of the Code to generate revenue and to secure the revenue due each and every year under the tax code. I'm not sure what you mean by putting it back into a tax sale. In the case at hand, what we saw is the 2008 taxes, which were then product of a sale in error granted in 2012, I believe. Correct. When those were then put at the next tax sale to be eligible for purchase by any buyer who wished to secure the procedures of the tax code and participate in the tax sale, if this case were allowed to force treasurers to question whether they should place sale in error sales back into upcoming tax sales, there would be uncertainty whether the treasurers could achieve the purpose of securing the revenue from the initial year all the way forward into each systematic year's placement into the tax sale system. These overarching purposes of generating tax revenue are not what the petitioner has presented to you. Purposes by the petitioner are to encourage tax buyer participation, and while the treasurer certainly agrees with that very important purpose, that is not the fundamental purpose of the property tax code. When discussing the overarching purpose, we have to come back to the constitutional mandate of uniformity, and that can be achieved by adherence to the plain language of the property tax code by each county treasurer. Second, if you look to the plain language of the statute at play to determine the purpose, 2248 specifically requires redemption of all forfeitures and sales occurring subsequent to the sale. It imposes that a court insists on strict compliance with this requirement. The collector has continually argued that there is no room for construction on this section of the statute. An interpretation of 2240B as the petitioner requests undoes that strict imposition of the 2248 requirements. And it not only undoes the redemption requirements, but when it places into question the strict compliance to all of the requirements, it would be another case of uncertainty in which requirements courts can look and afford not strict compliance with if this court were allowed other courts to forego the strict compliance with all components of 2240A. 2240B, as interpreted by the collector, is not made meaningless by a plain language reading of 2240A. Even in my fairly limited time interpreting the case law around the property tax code, it's replete with instances where good faith mistakes have been made and taxes open up much later. In that instance, when the requirements of 2240A have occurred, where a deed has been granted, 2240B would come into play such that complete merchantable title of the tax deed would be maintained when those opened up taxes would then be merged into the tax deed. Finally, the treasurer argues that the First District's decision in LZ demonstrates an appropriate interpretation of 2240A and B. LZ emphasized the primary role of statutory construction to give effect to the intent of the legislature. LZ noted that the most reliable indication of the intent is the language itself, and it was in reliance on the LZ case that the circuit court initially determined that merger was inappropriate in this instance because there was no delinquent taxes when the deed was granted to the petitioner. Since the LZ decision in 2009, Section 2240 has been amended during the 98th session and notwithstanding LZ, no change to the 2240A requirements were made. Counsel, I just want to ask a very basic procedural question. What is the procedure for challenging a court order that directs the issuance of a tax deed? The procedure for challenging an order that directs the issuance of the tax deed would likely come from any of the parties that were statutorily required to be notified of the tax deed proceeding. They would be afforded the opportunity to be present at that proceeding. That's why the tax code has so many provisions which afford participation in each of those cases. The court orders the issuance of a tax deed. Now someone wants to challenge that. Does the statute provide for a procedure thereafter relative to a challenge to that order? What happens? From my experience in the property tax code, I've seen cases where this is where the court dives into equity, where maybe the original holder of the deed brought a case challenging the issuance of the deed under an equitable line of reasoning. Typically it has to do with whether they received notice of the proceeding in front of the court or not. Due to the numerous provisions affording everyone with an interest in the property of the tax proceedings, I can't recall whether there's a strict statutory procedure after a deed has been granted because there's so much that goes into play before the deed is granted. As we prepare to listen to the argument of petitioner, the treasurer notes that the petitioner attempts to read even more statutory interpretation into the plain language of the code than can be accounted for in case law or the relevant legislative history. Frankly, the tax buyer here attempts to couch arguments in terms of what is done in other counties. That is a far cry from the constitutional uniformity that's required and which brings the collector in Champaign County back consistently to the plain language of the statute. The petitioner suggests there's an infinite level of uncertainty thrust upon petitioners due to the treasurer's interpretation. In fact, petitioners and purchasers such as the petitioner are the most savvy in their understanding of the statute of limitations relating to sales and errors. The buyer has continually presented even if somewhat inconsistent models of valuation and expectations of returns on sales. Frankly, the first presumption under the code is that there's a preference for redemption. So to present numerous models on securing a deed and the value of a deed without first going to the presumption that all that any tax purchaser will be entitled to is the redemption and the statutory interests associated with that shows the error in petitioner's reasoning. And second, the entire nature of tax buying is filled with some level of uncertainty balanced only by the diligence of a potential tax buyer. Savvy purchasers such as the petitioner here are in the best position to navigate this uncertainty. Finally, the petitioner's arguments suggest that the treasurer is opposed to any circumstance where taxes are refunded and a merger is granted. That's simply not the case, but the treasurer refuses to issue a refund unless the plain language of the statute affords it. When courts interpret statutes, they follow the reasoning clearly outlined in ELSI. This court shouldn't wade into the policy balancing function of the legislature by tax buyers alone. In conclusion, the position of the parties after the first order entered last summer is one that's contemplated by the property tax code. The collector can be sure that he or she can place taxes that are subject of a sale in error into a subsequent tax sale and still achieve the purpose of collecting all tax revenues. The taxing districts are able to secure their full levies. Each subsequent tax purchaser secures the same uniformity of process, which may lead to either redemption or to their own fully merchantable deed. And finally, the tax buyer here has secured a deed fully merchantable on a valuable piece of property. The situation by the parties here should only encourage further tax participation by the tax buyer here and by others and do that all under the plain language of the code. For these reasons, we ask that this court reverse the decision in the circuit court. Mr. Barr. Good afternoon. My name is John Barr. I represent Community Enrichment Group. If you'd like for me to answer your question about the procedure for challenging a tax deed off the bat, there's a statute in the property tax code. It's 35 ILCS 200-22-45. And that's the one source in the property tax code in which you can challenge a deed. It has four grounds for challenging a deed. I don't remember them exactly. The first is the property wasn't subject to taxation, I believe. Second is the taxes have already been paid. Very rarely are those used. The third is that the tax deed has been procured by fraud. And the challenger must show by clear and convincing evidence that the tax deed was procured at the trial court through fraud. And that's 99 percent of all cases are on that basis. And how is it raised? Is that by motion? It's a Section 2-1401 motion. It must be raised within two years. Yes, it's a post-judgment motion under Section 2-1401 of the Code of Civil Procedure. You can also raise, if you read the statute, it initially said that you either appeal the case within 30 days or, after 30 days, use the 2-1401. If you recall, 2-1401 is a post-judgment motion after 30 days. I believe it's a 2-613 or something that's raised within 30 days. And in the 90s, the 3rd District Appellate Court, a case I happened to be involved in, found that unconstitutional. And so now you can raise, as any judgment, within 30 days by filing a motion for reconsideration or what have you within 30 days. And then the 4th ground is if the tax buyer did not name in the publication someone who had a recorded interest in the property. So there's a case in which the title company missed a mortgage and the tax buyer said, well, I didn't commit fraud. I followed what the title company told me. And they said, well, no, you didn't serve this mortgage company. Well, if you name the mortgage company in the publication or you fail to name that recorded interest, then that's grounds for returning the deed as well. But that's the procedure and how that can happen. Well, Mr. Barr, I have a question for you. Of course, the tax deed was granted, I believe, in August of 2014. Okay. And then the motion that you filed for the sale in error, or whatever it's called, was filed in May of 15. Correct. Is there a jurisdictional issue here for the trial court? No. We actually have, you have one year after you get your deed. It's basically a three-year process. From the time of the tax sale, you can extend your taxes out to a maximum of three years from the day of the sale. And most tax buyers do that. So it's a three-year process. Section, I think it's 2250, I think, if I recall, 35 ILCS. It says you have one year then to record the deed. And that one year, and there's numerous cases that have discussed that, you have one year in which to file your sale in error, obtain your deed, do anything you want. And it's this one year that allows the tax buyer to decide whether they want to own the property. Because until that order for tax deed is signed, they don't have the right to step onto the property. I mean, it's somebody else's property. So there's a one-year period of time. So had we missed that year, then yes. Then there was a problem. There's no question that the purpose of the property tax code is to raise revenue. There is not a single person employed by Champaign County or any other county in the state of Illinois whose job is to collect delinquent real estate taxes. The state of Illinois Department of Revenue has, I'm sure, hundreds if not thousands of employees. Internal Revenue Service has thousands of employees whose job is to collect tax purchases. We do that for the state. So knowing that we have this process, and it's complicated, but we have this process and it works. But you can't take one little piece out and say, well, I don't like this little piece. Let's pull this out. But everything else, let's leave it the same. Well, that's what Champaign County is trying to do. They're saying, well, okay, we'll take your money. We'll do this, do that. But under Section 2240A, they love that statute, and that's fine. We have to pay the tax. But they're ignoring just as important Section 2240B that says once you've paid the tax, we are now making an exception if the tax qualifies. And there are qualifications that remain. It's relatively rare. In fact, very rare, I would say, that it would qualify. We're going to allow the tax property, and the county isn't going to get their tax from the tax buyer. The section provides that the county can go after the original owner. Still stays personally liable for the tax, but that's the process. So we can't just pull, again, one little piece out. Keep in mind that ELSI, and it's strange, in my opinion, to have a statute that you're looking at and you read it and say, okay. And then you hear there's a case on points. Ah, there's a case. Great. Well, this case makes it worse than it does clarify. And so they say, well, ELSI explains this and that. Well, when you read that, and I've read it a hundred times, it is very confusing as to what it means. The principal thing you have to keep in mind is when the appellate court was based upon a scavenger sale. A scavenger sale is a totally different animal. And as I cited in my brief, it's not even to raise revenue. It's to get the property back on the tax rolls. The county can decide whether to sell the taxes or not. They hold taxes for numerous years. You don't pay the tax. So in the annual tax sale, the tax buyer at the sale bids an interest rate. And the lowest interest rate wins. And then that day, the tax buyer writes a check and pays the amount of the tax to the county. So the county gets their money right then and there. Scavenger sale isn't that way at all. You pay an amount. And I believe I cited that the average was like 150 bucks or so for a period of time. So very, very different procedure. In fact, the scavenger sale is utilized mainly now just in Cook County. Downstate has basically gotten rid of the scavenger sale. We have the county trustee now that basically handles that. Because the scavenger sale was just so difficult, so fraught with dangers. Property owners of apartment buildings were buying the taxes for $100. And there's a scavenger sale crime. Just a different animal. So the tax buyer in Elsie didn't want to pay the tax. He wanted to get his deed and not have to pay. And there were 11 years of taxes in Elsie. The case doesn't say how much money, but 11 years of tax can be, I'm sure, substantial. So he wanted to offset them. And as is accepted in the facts, that's how almost every county does it now. Rather than paying the tax and then having a hearing on whether you qualify and getting a refund, you just offset it. And that's what we attempted to do first in our case here in Champaign County. The collector objected and said, no, you have to pay the tax first. Okay, well we don't want to pay the tax either because it's $188,000. Okay, we're going to offset it. We want it back. So we go through that, and of course that's why we're here now. Keep in mind that Elsie only addresses the question about whether the tax has to be paid first. That's all it addresses. Because remember, it says specifically that Section 2240B does not come into play until after the tax deed has been issued. So okay, Elsie is saying, community enrichment, you can't offset. You can't do it. You've got to pay that $188,000. You then file your motion for sale and error. You prove to the court that you qualify. And there are qualifications. It has to be a prior sale, which again this was. It's a 2008 tax. Our sale was the 2011. That 2008 has to become due then after your sale. Well that happened here. It became due again in 2013. And you can't have any involvement. In other words, community enrichment cannot be involved in any way with the prior owner of the 2008 tax. That's a company called Vista Security. And we've met all those tests. So as far as complying with Elsie, we have complied with Elsie as far as this first issue of do we have to pay the tax first. Elsie does not say that you don't get a sale and error. In fact, it says if you take the time to come back, you can get a sale and error if you meet these qualifications. The language of Elsie is also confusing in that there's a term called taxes open up or become or haven't been paid. I still do. It's been agreed by both parties that the term open up is not used in any case law. It's not used in any statute. We can guess as to what the court meant by open up. She can have an opinion. I can have an opinion. But it sure isn't clear at all. What is clear is the purpose of section 40B. Senator Peterson's comments with legislative history of we're going to protect that second tax buyer from a sale and error from a prior year. And we talk about how savvy tax buyers can be. Nobody in the world could predict that this $12,000 tax certificate would increase to $188,000. And that's what happened here. And so if a tax buyer is sitting at the sale or even thinking of going to a sale or how much to bid or what interest rate, knowing that this horror story of from $12,000 to $188,000, an investment of perhaps $60,000 to $65,000 if they had to pay all the taxes, ballooned to $250,000, knowing their right mind would go to a tax sale. The trial court found correctly that this would have a tremendous impact upon tax buyers and cause great confusion in the tax process. There are numerous cases, and I've cited some of them, where the Supreme Court and this Court has repeatedly held that tax buyers are to be favored and the statutes are to be strictly construed against. It's a revenue statute construed against the government. As far as the uncertainty to the county, there can be no reason why a county wouldn't sell a tax. So if you have a 2008 tax like we had here that then became a sale and error and then became delinquent again, there's no reason for the county not to sell that because they get their money right then and there. And if years later there's a question of merger or a question of refund, that can be addressed. It's no different than any other sale and error. There are numerous grounds for sale and errors and refund. So as far as causing any uncertainty to the county, I can't see that there would be any uncertainty. As far as uncertainty to the tax purchaser, there is no question that the uncertainty, as I've said, as to what's going to happen when I bid. And if I do bid, how am I going to get my money back if it turns out that there is a tremendous sale like this? As this court said in the Downstate Tax Purchaser Association v. Bean, the policy is to encourage purchase at tax sales. Turning a $12,000 tax into a $188,000 tax is unfair. It's unjust. The interest, of course, it's all interest and penalties. As I noted, as we know in the facts, it went up alone from October 25th of 2013 it was $109,000 in change, and then to July 23rd of 2015, less than two years later when we finally paid it, it increased by over $80,000 or almost $80,000 to $188,000 there. So to show that kind of change and the uncertainty it causes to tax purchasers is what Section 40B was intended. Senator Peterson was correct and said it correctly in 1999 on the Senate floor when he stated the purpose of Section 40B, that it was to protect that second tax buyer. The purpose of the property tax code is to generate revenue in major part through the purchase of taxes by the tax buyers. And causing an uncertainty that this would cause of not allowing a refund, as has been occurring in many other counties and under the statute, to deny it in this case would be unfair, not be in the best interest of the system. It would not comply with the intent or the language of the property tax code. Mr. Barr, that brings me to two questions that I wanted to ask you. So is it your position that the statute is ambiguous? It's ambiguous if you read the statute and ELSI. If you leave ELSI out, no, I don't think so. It says pay the tax, and then once you've gotten your deed, come and get your refund. No, I think that's clear. And although you're making the arguments about equity and it being unfair to a tax buyer, you're also taking the position that what the court did in granting the motion to reconsider and granting your motion was in compliance with the statute. That's exactly right, Your Honor. No, I think the statute, when you read it, and you realize this is the procedure you follow, you can't use the offset, you have to pay the tax and then come back, even though we didn't want to come up with $188,000. That's what we had to do. We did it. And so the county's happy with Section 40A, but now they don't like 40B. Well, wait a minute. Those are both legitimate sections of the property tax code. Follow them both. We paid the tax. Now give us our refund. And that's our position. Any other questions or issues I can address? I don't see any. Thank you, Mr. Clark. Ms. Davis, rebuttal. This is not the first time that a tax petitioner has been able to more easily answer a question about the property tax code, in my experience as an Assistant State's Attorney and representing the collector. I think that goes to the point that these petitioners are in the best position to understand the tax code and to measure the level of uncertainty that exists under the code. Petitioner just told you and described the three to maybe four-year process of securing a sale in error. Petitioner with any level of due diligence can look at any tax sales that have occurred in that three to four years, can understand any interest that might accumulate, and can use that to base their strategic decisions, whether to sell or not. And so all of the information that you've heard from petitioners shows that they are in the best position to understand the code, to navigate the code and its plain language. And they shouldn't be afforded policy reasons on why one section of the code should not apply in this particular situation. Petitioner describes that ELSI is confusing and ambiguous. I read ELSI and it's a short decision and it's straightforward and it's clear on statutory interpretation how courts should interpret the way 2240A and 2240B work together. I don't see the ambiguity and we certainly hope that this Court sees the statute at play and a clear, plain language interpretation that supports the collector's position. Thank you. Thank you.